UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| JEFFREY SAWYER, *individually and* | : |
| *on behalf of a class of all others similarly situated*, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   No. 5:16-cv-5674 |
| | : |
| HEALTH CARE SOLUTIONS AT HOME, INC; | : |
| and LINCARE INC., | : |
| | : |
| Defendants. | : |

_____

**O P I N I O N**

**Plaintiff's Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice Pursuant to 29 U.S.C. § 216(b), ECF No. 18—Granted in part**

**Joseph F. Leeson, Jr.**                                                                                            **April 25, 2018**
**United States District Judge**

## I.   Introduction

Presently before this Court is Plaintiff's Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice Pursuant to 29 U.S.C. § 216(b). ECF No. 18. For the reasons that follow, this Court grants Plaintiff's Motion in part.

## II.   Background and Procedural History

In October 2016, Plaintiff Jeffrey Sawyer filed a complaint against Defendants Health Care Solutions at Home, Inc. and Lincare Inc., on behalf of himself and all similarly situated hourly workers employed by Defendants. Sawyer contends that Defendants falsely altered the timekeeping records of their hourly employees to deduct 30-minute lunch breaks from hourly employees' hours, even when they worked during that time, and failed to factor bonuses into the

overtime rate for hourly employees, in violation of the Fair Labor Standards Act ("FLSA") and Pennsylvania law. ECF No.1.

Defendants are in the business of delivering respiratory devices and treatment services directly to patients' homes, and maintain over a thousand service centers in forty-eight states. Pl.'s Memo. in Support 2, ECF No. 19. Defendants employ hourly-paid delivery drivers, known as "Service Representatives," and Customer Service Representatives throughout Pennsylvania.[1] *Id.* Driver/Service Representatives' responsibilities include delivery, setup, and maintenance of respiratory equipment at customers' homes. *Id.* at 3. Customer Service Representatives communicate with patients regarding refills of supplies and educate customers about available products and services. *Id.* Both Driver/Service Representatives and Customer Service Representatives are hourly-paid and overtime-eligible employees. *Id.*

Defendants employed Sawyer as a full-time Driver/Service Representative at their service center location in Wyomissing, Pennsylvania.[2] Compl. ¶ 21. Because of his busy schedule of visits to customer sites, he often did not take an uninterrupted lunch break. Compl. ¶¶ 26, 34. Sawyer alleges that Defendants nevertheless adopted a corporate policy of automatically deducting a half-hour lunch break from employees' time logs, regardless of whether they actually took a break. Compl. ¶ 36. As a result, Defendants deprived employees of wages owed for work performed during the "lunch breaks" Defendants deducted, and, since some of these deducted hours were overtime, Defendants deprived the employees of overtime compensation. Compl. ¶¶ 41, 43.

---

[1] For clarity, this Court refers to Sawyer's position as "Driver/Service Representative."
[2] Defendants contend that Lincare Inc. was not Sawyer's employer and thus is not a proper party to this action. Defs.' Opp. 1, ECF No. 25. The Court recognizes that Defendants have preserved this argument, but refers to the Defendants collectively for present purposes.

Defendants maintained a non-discretionary bonus policy that awarded a $15 bonus each time an employee convinced a patient to buy medication directly from Defendants. Sawyer alleges that Defendants did not include the bonus compensation as part of the regular rate of pay for purposes of calculating overtime pay for Driver/Service Representatives and Customer Service Representatives. Compl. ¶¶ 44-45.

Sawyer brought suit against Defendants, alleging a violation of the FLSA based on Defendants' failure to pay overtime, a violation of the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101-333.15, based on failure to compensate employees for work performed, a violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1-260.45, and breach of contract. Sawyer now moves for preliminary certification of an FLSA collective, defined as

> All current and former drivers, customer service representatives, and other hourly employees who worked for Health Care Solutions at Home Inc. and/or Lincare Inc. d/b/a Lincare in the Commonwealth of Pennsylvania at any time in the last 3 years.

Mot. 1. Sawyer also asks this Court to order Defendants to identify all potential members of the proposed collective and to authorize dissemination of his proposed notice by first-class mail, email, and text message.

### III.   Legal Standard—Motion for Conditional Certification Under the FLSA

"Enacted in 1938, the FLSA, 29 U.S.C. § 201 et seq., was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n.18 (1945)), *rev'd on other*

*grounds*, 133 S.Ct. 1523 (2013). Among other things, the FLSA "requires all employers to pay their employees for all time worked." *Reich v. Brenaman Elec. Serv.,* No. CIV.A. 95–CV–3737, 1997 WL 164235, at *2 (E.D. Pa. Mar. 28, 1997) (citing 29 U.S.C. § 206(a)).

Under the collective action provision of the FLSA, an employee alleging an FLSA violation may bring an action on behalf of himself and other employees "similarly situated." 29 U.S.C. § 216(b). Unlike traditional class actions, however, each allegedly wronged employee must elect to join, or "opt in" to, the collective action and must do so by giving his or her consent in writing. *See Gordon v. Maxim Healthcare Servs., Inc.*, No. CIV.A. 13–7175, 2014 WL 7008469, at *1 (E.D. Pa. Dec. 11, 2014). The FLSA "does not provide specific procedures by which potential plaintiffs may elect to opt in, but the Supreme Court has held that 'district courts have discretion, in appropriate cases, to implement [§ 216(b) ] . . . by facilitating notice to potential plaintiffs.'" *Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 88 (E.D. Pa. 2015) (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). "In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis." *Symczyk*, 656 F.3d at 192. "During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Id.* "If the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Id.*

The Court of Appeals for the Third Circuit has observed that this conditional certification "is not really a certification." *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). Rather, it is "only the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members" and "is neither necessary nor sufficient for the

existence of a representative action under FLSA." *Symczyk*, 656 F.3d at 194 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010)). Then, following this initial stage, "[a]fter discovery, and with the benefit of 'a much thicker record than it had at the notice stage,' [the] court . . . makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 193 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). If the plaintiff satisfies its burden at this second stage, "the case may proceed to trial as a collective action." *Id.*

At the first step of the inquiry, the plaintiff must make a "modest factual showing that the proposed recipients of opt-in notices are similarly situated." *Id.* Under this standard, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* This is a "fairly lenient standard." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (quoting *Zavala v. Wal–Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012)) (internal quotation marks omitted).

### IV. Analysis

Although Sawyer's proposed collective definition included "drivers, customer service representatives, and other hourly employees," Sawyer clarified in his reply brief that he intends to limit the proposed collective to hourly employees of Defendants working as Driver/Service Representatives and Customer Service Representatives. Reply 1, ECF No. 26. At this first stage of the certification analysis, then, this Court must determine whether Sawyer has made a modest factual showing of a nexus between the way Defendants' alleged timekeeping and overtime

policies affected him and the way in which they affected other Driver/Service Representatives and Customer Service Representatives.

### 1. Failure to Factor Bonuses into Overtime Pay Rates

In support of his claim that Defendants did not factor bonuses into overtime pay rates, Sawyer presents his own declaration, in which he attests that Defendants calculated his overtime rate without factoring in the compensation he received from bonuses, so his overtime rate did not increase during weeks in which he received bonuses. Sawyer Decl. ¶ 3, Ex. 3 to Pl.'s Mot., ECF No. 19-3. He also presents a pay stub to show that the bonuses were not included in his overtime rate. Pay Stub, Ex. 10 to Pl.'s Mot., ECF No. 19-10.

However, with respect to similarly-situated employees, Sawyer offers only his own belief that Defendants did not factor bonuses into their calculation of other Driver/Service Representatives' and Customer Service Representatives' overtime pay. Sawyer Decl. ¶ 3. He presents no evidence that other employees were similarly situated with respect to their overtime rates. The record contains no testimony of other employees that they, too, received overtime pay at a rate that did not account for their bonuses, and no evidence of a company policy that excluded bonuses from overtime rates. The declaration of Sawyer's former supervisor is silent as to calculation of overtime rates. Schenck Decl., Ex. 4 to Pl.'s Mot., ECF No. 19-4. Without more, Sawyer's argument that Defendants must have violated other employees' rights because their policies allegedly violated his rights does not satisfy the modest factual showing test. *See Wright v. Lehigh Valley Hosp.*, No. CIV.A 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010) (denying conditional certification because nurse's "unsupported assertion" that other nurses had suffered the same deprivations under employer's policy did not sustain her "minimal burden"). Sawyer has set forth an individual claim based on Defendants' failure to include

bonuses in his overtime rate, but Sawyer's request for conditional certification of a collective is denied with respect to this claim.

### 2. Improper Deductions for Meal Breaks

Defendants argue that Sawyer has not met his burden of showing that conditional certification is appropriate for several reasons. First, they contend that the proposed collective members waived their right to participate in a collective action, either by signing acknowledgments that they assented to the policies in the employee handbook, which included a waiver of collective action rights, or by signing a stand-alone waiver. Defs.' Opp. 19. Defendants cite *Adami v. Cardo Windows, Inc.*, for the proposition that mandatory arbitration and/or class action waiver agreements preclude conditional certification of a collective that includes employees who signed those agreements. 299 F.R.D. 68, 81-82 (D.N.J. 2014). However, the court in *Adami* based its decision in part on the fact that the named plaintiffs had not signed the agreements, and so had no standing to contest them. *Id.* In this case, Defendants assert that Sawyer signed a form acknowledging that he agreed to the policies in the employee handbook; thus, Sawyer is similarly situated with respect to the proposed collective members as far as the alleged waivers are concerned.

Moreover, Defendants' argument is premature: courts consistently hold that agreements barring lawsuits, such as binding arbitration agreements, are irrelevant to conditional certification because the agreements implicate the merits of the dispute. *See, e.g., Racey v. Jay-Jay Cabaret, Inc.*, No. 15 CIV. 8228 (KPF), 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016) (recognizing that issue of binding arbitration agreements was "premature" and "[w]hile the Court may ultimately have to evaluate the validity of any purported arbitration agreements, such inquiry will not prevent conditional certification at this stage"); *Williams v. Omainsky*, No. 15-

0123-WS-N, 2016 WL 297718, at *6–7 & n.14 (S.D. Ala. Jan. 21, 2016) (recognizing that courts routinely decline to address binding arbitration agreements at conditional certification stage and collecting cases); *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 685 n.7 (D.N.J. 2014) (noting that the fact "[t]hat some service technicians have signed arbitration agreements does not preclude conditional certification of all service technicians across the United States" and reserving the issue for final certification). This Court, too, will defer consideration of the validity of any collective action waiver until final certification or the determination of Sawyer's individual claim on the merits.[3]

Defendants also argue that Sawyer and the members of the proposed collective are not similarly situated, because each employee's meal break routine depends on the particular circumstance of his service center, his supervisor, and other factors. They contend that Sawyer's allegations of similarity are too vague and speculative, and have submitted twelve declarations from various employees and managers to show that Defendants never deducted meal breaks for time that employees worked.

To establish his modest factual showing, Sawyer presents his own declaration, which asserts that the manager of the Wyomissing office, Justin Schenck, told all hourly Driver/Service Representatives and Customer Service Representatives in 2013 that they had to clock out for thirty minutes each day for lunch. Sawyer Decl. ¶ 7. When the employees were too busy to take a lunch break, Schenck nevertheless would deduct thirty minutes retroactively from their time

---

[3] Defendants' likelihood of success in enforcing collective action waivers remains uncertain because the question of whether FLSA collective action waivers are *per se* unenforceable is currently pending before the United States Supreme Court. *See NLRB v. Murphy Oil USA, Inc.*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted* 137 S. Ct. 809 (U.S. Jan. 13, 2017).

sheets. *Id.* Sawyer states that he and other employees complained to Schenck, but he responded that company policy required the deductions. *Id.*

If his own testimony were the only evidence Sawyer presented, his claim based on unpaid wages would likely fail for the same reasons as his overtime claim. But Schenck's declaration also supports Sawyer's claim that Defendants enforced a policy of deducting time for meal breaks employees did not take. Schenck admits that on most days, the hourly employees in his branch—four Driver/Service Representatives and one Customer Service Representative—did not take their lunch breaks, but that he deducted thirty minutes from their time sheets anyway. Schenck Decl. ¶¶ 2, 3, 9.  Schenck states that he made these deductions pursuant to company policy. *Id.* ¶ 9. He relates that he received an email in 2013 from his Area Manager, Melissa Poff, reminding all branch managers that all employees had to clock out for 30 minutes each day for a lunch break, pursuant to company policy. *Id.* ¶ 7. According to Schenck, Poff indicated that "it was up to the employees whether they wanted to continue working when they were clocked out," and that managers were responsible for ensuring that each employee was clocked out for thirty minutes each day. *Id.* In 2016, Schenck received an email from Poff's replacement, Brian Jones, to all branch managers, reiterating that branch managers were responsible for clocking employees out for lunch. *Id.* ¶ 8.

These allegations satisfy Sawyer's burden of demonstrating similarly situated potential collective members. At this stage in the litigation, Sawyer "must only allege a policy and present facts showing that the alleged policy affected [him] and all other [employees] similarly." *See Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 683 (D.N.J. 2014). Schenck's declaration shows a policy within his Area Managers' territory of deducting meal breaks even when employees did not take them, establishing a "factual nexus" between Sawyer's situation and the situation of

other employees. *See Harriel v. Wal-Mart Stores, Inc.*, No. CIV.A. 11-2510 MLC, 2012 WL 2878078, at *4 (D.N.J. July 13, 2012) ("A plaintiff must show a 'factual nexus' between his or her situation and the situation of other current and former employees sufficient to determine that they are similarly situated.") (citing *Aquilino v. Home Depot, Inc.*, No. 04–4100, 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006)). This Court finds that Sawyer has made the required modest factual showing, but that he is entitled to conditional certification of a more limited collective than he requests.[4]

Although Sawyer seeks preliminary certification of a collective encompassing Defendants' employees throughout Pennsylvania, he has presented evidence of Defendants' policy being applied only to employees in the offices under the control of Schenck's Area Managers (Poff and Jones), namely, the Hanover, Harrisburg, Lancaster, Wyomissing, and York offices. *See* Schenck Decl. ¶ 6. Therefore, this Court restricts the collective to Defendants' hourly Driver/Service Representatives and Customer Service Representatives in those offices. *See Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *5 (W.D. Pa. Feb. 4, 2010) (recognizing that in circumstances where plaintiff has not produced evidence of a company-wide policy, limiting certification and notice to geographic areas in which plaintiffs

---

[4] Against Defendants' urging, this Court chooses not to follow *Udo v. Lincare, Inc.*, No. 8:13-CV-1899-T-23TGW, 2014 WL 5354589 (M.D. Fla. Sept. 17, 2014). In *Udo*, although the plaintiff sought conditional certification, the court applied a more stringent standard closer to that applied to final certification because the parties had already conducted significant discovery. *See id.* at *10 ("Udo seeks 'notice stage' certification of the proposed collective action. As an initial matter, the procedural posture of this case is such that analysis under the first stage recommended in *Hipp* [conditional certification] seems inapt."). Additionally, the plaintiff in *Udo* presented only the affidavits of opt-in plaintiffs, each of whom worked under a separate manager. *Id.* at *10-11. Here, Sawyer presents the testimony of his own manager to establish a uniform policy that affected other employees.

have made a preliminary factual showing of similarly situated plaintiffs is appropriate, and collecting cases).[5]

### 3. Proposed Notice

Sawyer requests that this Court order Defendants to provide cell phone numbers and email addresses of the potential class members and authorize dissemination of notice by mail, email, and text message. Defendants object and argue that first-class mail should suffice for notice. Sawyer does not respond to this argument. Nor does the record suggest that notice by mail would be inadequate. Therefore, this Court will limit dissemination of notice to first-class mail. *See Vargas v. Gen. Nutrition Centers, Inc.*, No. 2:10-CV-867, 2012 WL 5336166, at *13 (W.D. Pa. Oct. 26, 2012) (rejecting request for notice by email because of risk that email could "compromise the integrity of the notice process" and absence of evidence that mail would be inadequate); *cf. Bland v. Calfrac Well Servs. Corp.*, No. 2:12-CV-01407, 2013 WL 4054594, at *3 (W.D. Pa. Aug. 12, 2013) (permitting notice by email where record suggested that some opt-in plaintiffs might not receive timely notice otherwise).

Additionally, Defendants request that the proposed notice inform potential opt-in plaintiffs of the possible consequences of joining the lawsuit, such as liability for Defendants' costs. Because Sawyer does not respond to this request either, this Court will grant it, and the parties must provide notice of possible liability for costs and expenses in the event Defendants prevail.

---

[5] Although Schenck testifies that he kept in close contact with other branches in his area, conferred with employees, and visited Lincare offices in Baltimore and Indianapolis, he describes only his familiarity with the job duties and heavy workloads of employees in those branches. *See* Schenck Decl. ¶ 10. He offers no evidence that a similar policy of meal break deductions applied to those employees. Thus Sawyer has not shown that employees beyond those who work at branches overseen by Schenck's Area Managers are similarly situated.

## V. Conclusion

For the reasons discussed above, Sawyer's Motion is granted in part. This Court grants conditional certification for a collective limited to Driver/Service Representatives and Customer Service Representatives who worked at Defendants' Hanover, Harrisburg, Lancaster, Wyomissing, and York locations. Additionally, certification is limited to Sawyer's claim based on improper deduction of meal breaks. Notice to potential opt-in plaintiffs will be limited to first-class mail. A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge