IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEFFREY SAWYER,** *on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br>vs.<br><br>**HEALTH CARE SOLUTIONS AT HOME INC. d/b/a LINCARE and LINCARE INC.**<br><br>    Defendants. | Case No. 5:16-cv-05674-JFL |

### BRIEF IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT

This FLSA collective action has been settled on behalf of named plaintiff Jeffrey Sawyer ("Sawyer") and 5 opt-in plaintiffs (collectively "Plaintiffs"). Under the settlement, Defendants Health Care Solutions At Home, Inc. and Lincare Inc. ("Defendants") must pay $21,900.01 to Plaintiffs. See *Exhibit 1*, Confidential Settlement Agreement ("Agreement").

Collective action settlements are subject to judicial scrutiny and must constitute a "fair and reasonable resolution of a bona fide dispute…." *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 U.S. Dist. LEXIS 158478, at *20-22 (E.D. Pa. Sep. 27, 2017). As discussed below, the instant settlement should be approved.

### I.    BACKGROUND

**A.    Procedural History**

Plaintiffs were employed as hourly Service Representatives (drivers) and Customer Service Representatives at Defendants' Hanover, Harrisburg, Lancaster, Wyomissing, and/or York locations in Pennsylvania. In this lawsuit, Plaintiffs allege that Defendants failed to pay them for all overtime hours by (i) modifying time-sheets to reflect 30-minute lunch breaks regardless of whether or for how long the breaks were taken; and (ii) failed to include non-excludable

compensation, such as nondiscretionary bonus compensation, as part of Plaintiffs' "regular rates" of pay for the purpose of calculating their overtime rates of pay. *See* Complaint (Doc. 1) at ¶¶ 1-6. Defendants deny any wrongdoing. *See* Answer (Doc. 12).

On April 26, 2018, the Court conditionally certified a putative FLSA collective comprised of "[a]ll current and former hourly Service Representatives (drivers) and Customer Service Representatives who worked for Defendants at Defendants' Hanover, Harrisburg, Lancaster, Wyomissing, and/or York locations in Pennsylvania at any time on or after March 15, 2014." Doc. 35 at ¶ 1. On July 16, 2018, the Court approved the proposed notice and consent forms and established certain notice protocols. Doc. 40. On July 19, 2018, the notice was sent via US mail to the 54 potential collective members identified by Defendants. Two individuals opted in on August 6, 2018, and another three opted in on August 20, 2018. As a result of the notice process, the FLSA collective currently stands at 6 plaintiffs (including Sawyer).

The parties completed discovery, which included, *inter alia*, Defendants' production of timekeeping and payroll data for all 6 plaintiffs. During the discovery period, Plaintiffs' counsel from Brown, LLC interviewed almost all of the Plaintiffs, obtaining valuable information concerning each Plaintiff's recollection of the pertinent facts. Further, Defendants deposed named Plaintiff Sawyer and both sides took direct deposition testimony from Sawyer's former manager Justin Schenk.

In October 2018, the lawsuit settled after weeks of arms-length negotiations. At the time the settlement was reached, the Parties were in the process of coordinating depositions of the 5 Opt-in Plaintiffs, a Fed. R. Civ. P. 30(b)(6) deposition of Defendants, and depositions of Plaintiffs' other formers managers, some of whom have not worked for Defendants in years and would have had to be subpoenaed. The Parties were also negotiating a sampling of discovery pertaining to

individuals throughout Pennsylvania that Plaintiffs would have used to support a motion for class certification under Fed. R. Civ. P. 23. The settlement enabled the Parties to avoid these significant costs and provides excellent value for each of the 6 Plaintiffs.

**B.     The Settlement Terms**

The settlement creates a non-reversionary fund of $21,900.01 to be paid by Defendants. *See Agreement*, at ¶ 2.1. In exchange, the 6 Opt-In Plaintiffs release all legal claims relating to the lawsuit. *See id*. at ¶ 3.1. Each Plaintiffs share of the $21,900.01 is based on the number of workweeks he/she was employed after November 1, 2013.[1] The share amounts are set forth in each Plaintiff's signed "Acceptance and Verification of Settlement Agreement" forms. *See* **Exhibit 2**. Importantly, Plaintiffs are not required to submit a claim form in order to receive their payment, and none of the $21,900.01 will revert to Defendants.

Each Plaintiff's payment amount is as follows:

| Jeffrey Sawyer | $10,034.02 |
|---|---|
| Angel Colon | $4,909.56 |
| Crystal Hamilton | $4,964.12 |
| Felicia Kissinger | $811.44 |
| Anthony Kreitz | $1,131.94 |
| Frederick Stallings | $48.94 |

In addition to the $21,900.01 payment to Plaintiffs, Brown, LLC will petition the Court for up to $110,000 in in attorney's fees and litigation expenses. *See id*. at ¶ 2.2.

---

[1] This date falls three years prior to Sawyer's commencement of the lawsuit because the FLSA allows for a three-year limitations period for "willful" violations. *See* 29 U.S.C. § 255(a).

## II. ARGUMENT

As discussed below, the Parties' settlement is fair and reasonable and warrants Court approval.

**A. The $21,900.01 Payment to Plaintiffs Warrants Court Approval.**

Your Honor summarized the standard for approval of an FLSA collective action settlement in *Tompkins*:

> [T]he Court [] determines whether the proposed settlement of Plaintiffs' FLSA claims "'is a fair and reasonable resolution of a bona fide dispute over FLSA 'provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). A proposed settlement resolves a bona fide dispute if its terms "reflect a reasonable compromise over issues, such as … back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354.
> …
> [T]he Court [then] must conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employees and (2) the settlement furthers the FLSA's implementation in the workplace. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 U.S. Dist. LEXIS 112137, 2015 WL 5025810, at *2 (E.D. Pa. Aug. 24, 2015); *McGee v. Ann's Choice, Inc*., No. 12-cv-2664, 2014 U.S. Dist. LEXIS 75840, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). In evaluating whether a settlement is "fair and reasonable" under the FLSA, courts in the Third Circuit have considered the *Girsh* factors as they do in the state law class context. *Waltz v. Aveda Transportation & Energy Servs. Inc*., No. 4:16-cv-00469, 2017 U.S. Dist. LEXIS 105310, 2017 WL 2907217, at *3 (M.D. Pa. July 7, 2017); *Brumley v. Camin Cargo Control, Inc*., No. 08-1798, 2012 U.S. Dist. LEXIS 40599, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012) (noting courts' use of *Girsh* factors in FLSA context in the absence of clear Third Circuit standards).
> …
> Lastly, the Court must consider whether the settlement furthers or frustrates the implementation of the FLSA in the workplace.

No. 5:14-cv-3737, 2017 U.S. Dist. LEXIS 158478, at *20-22 (E.D. Pa. Sep. 27, 2017) (citing *Girsh v. New America Fund, Inc*., 521 F.2d 153, 157 (3d Cir. 1975)).

### 1. The Settlement Resolves *Bona Fide* Disputes.

The Parties' settlement resolves bona fide disputes regarding the merits of Plaintiffs' claims and whether Plaintiffs can proceed in a collective action despite having all signed collective action waiver agreements. Both Defendants have answered and deny all liability for unpaid overtime compensation. Specifically, Defendants contend, among other things, that (i) they did not have knowledge of work allegedly performed by Plaintiffs (if any) during their unpaid meal breaks; (ii) even if there were technical violations of the FLSA, which Defendants deny, such violations were not willful (which would limit Plaintiffs to a two-year recovery period; and (iii) Defendants at all times acted in good faith (which would preclude an award of liquidated damages). Accordingly, because the Parties' settlement resolves multiple, bona fide disputes between them, this factor weights in favor of approval.

### 2. The Settlement Is Fair and Reasonable.

The Agreement provides each Plaintiff with a recovery that is more than fair and reasonably reflects the information adduced in discovery and the risks of further litigation. Plaintiffs estimate they worked approximately two unpaid 30 minute meal breaks per week, equating to 1 hour of damages per week. This assumption is based on interviews with Plaintiffs, review of payroll and timekeeping information, and the deposition testimony of Plaintiff Jeffrey Sawyer and his former manager Justin Schenk. Multiplying 1 hour times each Plaintiff's overtime rate for each week from November 1, 2013 through present yields a total damage estimate of $27,856.94, inclusive of liquidated damages. This figure likely exceeds what Plaintiffs would recover at trial (even assuming they prove 1 hour of off-the-clock work per week) because: (i) it assumes the Plaintiffs worked at least 40 hours in every week (or in other words, that the Plaintiffs never took days off for holidays, vacations, or illnesses); (ii) it is based on a recovery period of

three years prior to the complaint through present, notwithstanding the fact that under the FLSA a 2-year recovery period applies unless Plaintiffs can establish willfulness, and the 2-year period runs from the filing of each Plaintiff's consent form, not the filing of the complaint[2] (a difference of nearly 2 years in this case);[3] and (iii) it assumes that Plaintiffs would recover liquidated damages, notwithstanding Defendants' "good faith" defense. Defendants estimate that Plaintiffs' maximum recovery was $12,322 in actual damages and $24,644 including liquidated damages. Thus, the $21,900.01 Plaintiffs stand to recover under the Agreement is 78.62% of the maximum recovery estimated by Plaintiffs, and 88.87% of the maximum recovery estimated by Defendants.

### 3. The *Girsh* Factors Favor Approval:

#### a. Complexity, Expense and Likely Duration of the Litigation

This factor favors approval because, absent settlement, this litigation would have been complex, expensive, and lengthy. The lawsuit's **complexity** is exemplified by a host of unresolved substantive and procedural questions, including, among others: Should the collective be "decertified" under the multi-factor test described in *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012), and/or on the basis of Defendants' collective-action waiver that each Plaintiff signed? To what extent would Defendant's "official" policy prohibiting off-the-clock work impede Plaintiffs' recovery? Should knowledge of Plaintiffs' alleged off-the-clock work be

---

[2] The "statute of limitations is three years for a willful violation, two years otherwise," and "in a FLSA collective action, unlike a Rule 23 class action, the filing of plaintiffs' Complaint does not toll the statute of limitations for all potential members of the collective." *Viscomi v. Clubhouse Diner*, 2016 U.S. Dist. LEXIS 43375, at *10, March 31, 2016; 2016 WL 1255713 (E.D. Pa. 2016) (citing 29 U.S.C. § 255(a); 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1807, at 476 (3d ed. 2005)). "In other words, the statute of limitations is still running for potential opt-in plaintiffs until they file written consent." *Velasquez-Monterrosa v. Mi Casita Rests.*, 2016 U.S. Dist. LEXIS 56089, at *9 (E.D.N.C. Apr. 26, 2016).

[3] Plaintiff Sawyer commenced this action on October 31, 2016. However, Plaintiff's collective action notice was approved on July 16, 2018 and was mailed to potential collective members on July 19, 2018. Two of the five Opt-in Plaintiffs' consent forms were filed on August 6, 2018, and August 20, 2018.

imputed to Defendants? Can Plaintiffs prove liability and damages through "representative evidence," and, if so, what is the appropriate sample size? To what extent do the FLSA's various "good faith" defenses, *see* 29 U.S.C. §§ 255(a), 259, 260, apply to this case?

The litigation also would be moderately **expensive**. At trial, the Parties' counsel (in the absence of a damages stipulation) probably would need to retain competing economists to testify regarding damages. Also, because many of the defense witnesses (and some of the Plaintiffs) reside outside of Pennsylvania, travel expenses would be incurred during trial.

The litigation also would be **lengthy**. At the close of discovery, Defendants would move to decertify the collective. Such motions are extensive and often go undecided for many months after briefing is complete. Also, Defendants' summary judgment motion (if filed) would be extensive and time-consuming. Finally, given the number of Plaintiffs and defense witnesses, trial would last well over one week and possibly over two weeks.

### b. Reaction of the Class to the Settlement

This factor favors approval because each Plaintiff has signed the Agreement and, to date, no Plaintiffs have expressed disapproval towards the settlement.

### c. The Stage of the Proceeding and the Amount of Discovery Completed

This factor – which addresses "whether counsel had an adequate appreciation of the merits of the case before negotiating," *In re: Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) – favors approval because Brown, LLC entered into settlement negotiations with a solid understanding of the litigation landscape and the strengths and weaknesses of Plaintiffs' case. Prior to negotiations, Brown, LLC was armed with all pertinent policy documents and timekeeping/payroll data and had interviewed most of the Plaintiffs.

### d. Risk of Establishing Liability and Proving Damages

The fourth and fifth factors both favor approval. First, Plaintiffs would face significant risks in proving liability. In particular, Plaintiffs could have difficulty proving that Defendants – which maintain an "official" policy expressly prohibiting off-the-clock work – condoned the off-the-clock work claimed by Plaintiffs. As demonstrated by the declarations gathered by Defendants in opposing conditional certification, *see* Doc. 25, numerous defense witnesses would testify that off-the-clock work was prohibited by Defendants. Further, non-party witness Justin Schenk, Plaintiff Sawyer's former manager, testified in his deposition that he had no knowledge of Service Representatives or Customer Service Representatives performing work off the clock after 2013. Plaintiffs would disagree, and the trial would entail a classic "swearing contest" that turns on witness credibility. The outcome of such a trial is unpredictable.

Second, absent settlement, Plaintiffs would face significant risks in proving damages. Because Plaintiffs generally were paid well above the minimum wage, their damages are limited to those weeks in which a Plaintiff's actual work hours exceed the 40-hour overtime threshold. *See Davis v. Abington Memorial Hospital*, 765 F.3d 236, 243-44 (3d Cir. 2014). Assume, for example, that during a particular week a Plaintiff was paid for working 34 hours and proves that he actually worked 38 hours. Even though this Plaintiff has proven 4 hours of off-the-clock work during the week, he is entitled to no damages because all of the off-the-clock work occurred below the 40-hour threshold and, therefore, the overtime rights provisions of the FLSA and PMWA are never triggered. *See id*. The Plaintiff's only viable claim for this particular week would be a minimum wage claim. However, no minimum wage violation exists as long as the total compensation for the week divided by the actual work hours exceeds $7.25/hour (which always was the case).

### e. Risks of Maintaining the Class Through Trial

This factor favors approval. Absent settlement, Defendants would argue that the conditionally certified collective must be "decertified" because whether or not any individual Plaintiff was required to work off-the-clock depends on the predilections of his/her individual supervisor. While Plaintiffs believe they could defeat this argument, similar arguments have been successful in larger collective actions alleging off-the-clock work. *See, e.g., Martin v. Citizens Financial Group, Inc*., 2013 U.S. Dist. LEXIS 43084 (E.D. Pa. Mar. 27, 2013). Moreover, as reflected by Defendants' witness declarations, *see* Doc. 39-3, Plaintiffs might have trouble demonstrating a common "policy" of tolerating off-the-clock work.

### f. Ability of Defendants to Withstand a Greater Judgment

This factor arguably weighs against approval because Defendants can withstand a judgment greater than $21,900.01. However, courts generally find this factor to be of little consequence to the approval analysis. *See, e.g., Craig v. Rite Aid Corp*., 2013 U.S. Dist. LEXIS 2658, *40 (M.D. Pa. Jan. 7, 2013) (citing cases).

### g. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth *Girsh* factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re: Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 538 (3d Cir. 2004). Here, these factors favor of approval.

As already discussed in addressing *Girsh* factors 4-6, Plaintiffs face significant litigation risks in proving liability, proving damages, and holding this litigation together as a collective action. Thus, the question is whether, in light of these risks, Plaintiffs are getting "good value." *Warfarin*, 391 F.3d at 538.

Here, the settlement delivers to Plaintiffs (free and clear of attorney's fees and expenses) a total of $21,900.01, to be split amongst the 6 Plaintiffs on a *pro rata* basis according to the amount of time they worked for Defendants. The settlement payments equate to 78.62% of the maximum recovery estimated by Plaintiffs, and 88.87% of the maximum recovery estimated by Defendants. This represents an excellent result in light of the previously described litigation risks.

### h. Summary of the *Girsh* Factors

To sum up, *Girsh* factors 1, 2, 3, 4, 5, 6, 8, and 9 favor approval, while only factor 7 arguably weighs against approval. As such, the settlement should be approved.

### 4. The Settlement Furthers the Implementation of the FLSA in the Workplace.

Finally, the Agreement furthers the implementation of the FLSA in the workplace. In contrast with cases in which courts have denied settlements for containing overbroad releases, here the scope of the release is limited to "claims under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or any other wage-related statute arising out of Claimants' alleged employment with Defendants." *Agreement*, ¶ 3.1.

While the Agreement does contain a confidentiality provision, this does not offend the FLSA in this case because all of the 54 individuals whose rights under the FLSA are potentially at stake in his case have already received the Court-approved notice of Plaintiffs' claims and of the lawsuit and either joined the case and are included in the settlement, or elected not to join.

### III. CONCLUSION

For the above reasons, the Court should approve the settlement and enter the accompanying proposed order.

Date: December 19, 2018

Respectfully Submitted,

| | |
|---|---|
| /s Marilyn G. Moran | /s Jason T. Brown |
| Marilyn G. Moran | Jason T. Brown |
| **FORD HARRISON LLP** | Nicholas R. Conlon |
| 300 South Orange Avenue, Suite 1300 | **BROWN, LLC** |
| Orlando, FL 32801 | 111 Town Square Place, Suite 400 |
| P: 407-418-2310 | Jersey City, NJ 07310 |
| MMoran@fordharrison.com | P: 877-561-0000 |
| | F: 855-582-5297 |
| Counsel for Defendants | Jtb@jtblawgroup.com |
| | Nicholasconlon@jtblawgroup.com |
| | |
| | Counsel for Plaintiff |