UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

JEFFREY SAWYER, *individually and* :
*on behalf of a class of all others similarly situated*, :
:
Plaintiff, :
:
v. : No. 5:16-cv-5674
:
HEALTH CARE SOLUTIONS AT HOME, INC; :
and LINCARE INC., :
:
Defendants. :

———————————————————————

## MEMORANDUM AND ORDER
### Joint Motion for Approval of FLSA Settlement, ECF No. 50—Granted

**Joseph F. Leeson, Jr.**                                          **April 9, 2019**
**United States District Judge**

### I.    INTRODUCTION

In this case under the Fair Labor Standards Act ("FLSA"), Plaintiffs allege that their employers improperly deducted time from their recorded hours for lunch breaks Plaintiffs did not take and failed to factor bonus compensation into Plaintiffs' overtime rate. The parties have reached a settlement and move for Court approval as required in FLSA cases. For the reasons discussed below, the Court grants the motion and approves the settlement.

### II.    BACKGROUND

In October 2016, Plaintiff Jeffrey Sawyer filed a complaint against Defendants Health Care Solutions at Home, Inc. and Lincare Inc., on behalf of himself and all similarly situated hourly workers employed by Defendants. These employees worked as hourly Service Representatives and Customer Service Representatives at Defendants' Hanover, Harrisburg,

Lancaster, Wyomissing, and York locations in Pennsylvania. Sawyer contends that Defendants violated the Fair Labor Standards Act and Pennsylvania law by: (1) falsely altering the timekeeping records of their hourly employees to deduct thirty-minute lunch breaks from the employees' hours even when they did not take breaks, and (2) excluding bonus compensation from the calculation of the overtime rate for hourly employees. Complaint ¶¶ 1-6, ECF No. 1. Defendants deny any wrongdoing. *See* Answer, ECF No. 12.

On April 26, 2018, the Court conditionally certified a putative FLSA collective comprised of "[a]ll current and former hourly Service Representatives (drivers) and Customer Service Representatives who worked for Defendants at Defendants' Hanover, Harrisburg, Lancaster, Wyomissing, and/or York locations in Pennsylvania at any time on or after March 15, 2014." ECF No. 35 at ¶ 1. On July 16, 2018, the Court approved the proposed notice and consent forms and established procedures for giving notice. ECF No. 40. On July 19, 2018, the notice was sent via United States mail to the fifty-four potential collective members identified by Defendants. Two individuals opted in on August 6, 2018, and another three opted in on August 20, 2018; thus, the FLSA collective currently comprises six plaintiffs, including Sawyer.

The parties then conducted discovery, which included Defendants' production of timekeeping and payroll data for all six plaintiffs. During the discovery period, Plaintiffs' counsel interviewed most of the Plaintiffs, Defendants deposed Sawyer, and both sides deposed Sawyer's former manager Justin Schenk.

The parties reached a settlement in October 2018. They state that, at the time, they were preparing for depositions of the five opt-in Plaintiffs, Defendants' corporate designee, and other former managers of Plaintiffs. The settlement creates a non-reversionary fund of $21,900.01 to be paid by Defendants in exchange for Plaintiffs' release of all claims related to this lawsuit;

each Plaintiff will receive a share of the fund proportional to the number of weeks her or she was employed after November 1, 2013.[1] *See* Settlement Agreement ¶ 2.1, ECF No. 50-2. The parties now move jointly for Court approval of the settlement under the FLSA.[2]

## III.   LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). If employers violate the FLSA's minimum wage and overtime provisions, codified at 29 U.S.C. §§ 206 and 207, respectively, employers may be liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* (citing 29 U.S.C. § 216(b)).

District courts in the Third Circuit have identified two procedures for settling FLSA claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) the district court can approve a settlement under 29 U.S.C. § 216(b). *See Bredbenner v. Liberty Travel, Inc.*, Nos. 09–905, 09–1248 and 09–4587, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Bettger v. Crossmark, Inc.*, No. 13–2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015); *Brumley v. Camin Cargo*

---

[1]     Specifically, Jeffrey Sawyer will receive $10,034.02, Angel Colon will receive $4,909.56, Crystal Hamilton will receive $4,964.12, Felicia Kissinger will receive $811.44, Anthony Kreitz will receive $1,131.94, and Frederick Stallings will receive $48.94. Each Plaintiff has signed an Acceptance and Verification of Settlement Agreement form indicating his or her consent to the agreement. *See* ECF No. 50-3.

[2]     The parties have not requested approval of the settlement as it pertains to Plaintiff's state law claims, as court approval of a settlement of those claims is not required. *See Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-CV-1771 (CCC-MF), 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015).

*Control, Inc.*, Nos. 08–1798, 10–2461 and 09–6128, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012). As to the requirements for settlement approval, district courts in the Third Circuit have held that the court must determine that "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Brumley*, 2012 WL 1019337, at *2 (quoting *Lynn's Food*, 679 F.2d at 1354); *see also In re Chickie's & Pete's Wage & Hour Litig.*, No. 12–6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014); *Cuttic v. Crozer–Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); *Bredbenner*, 2011 WL 1344745, at *18.

A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Chickie's*, 2014 WL 911718, at *2 (quoting *Lynn's Food*, 679 F.2d at 1354). In evaluating whether a settlement is "fair and reasonable" under the FLSA, courts in the Third Circuit have considered the nine factors outlined by the Third Circuit Court of Appeals in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). *Waltz v. Aveda Transportation & Energy Servs. Inc.*, No. 4:16-cv-00469, 2017 WL 2907217, at *3 (M.D. Pa. July 7, 2017); *Brumley*, 2012 WL 1019337, at *4 (noting courts' use of *Girsh* factors in FLSA context in the absence of clear Third Circuit standards). Lastly, the Court must consider whether the settlement furthers or frustrates the implementation of the FLSA in the workplace. *Tompkins v. Farmers Ins. Exch.*, No. 5:14-CV-3737, 2017 WL 4284114, at *8 (E.D. Pa. Sept. 27, 2017).

## IV.  ANALYSIS

### A.  The Court grants final certification of the FLSA collective.

The Court previously granted conditional certification of the FLSA collective. Although Plaintiffs do not address final certification in their motion, the Court must complete the second

stage of certification and grant final certification of the collective action before it can approve the settlement agreement. *See Singleton v. First Student Mgmt. LLC,* Civ. No. 13–1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (certifying collective action for settlement absent specific argument on issue); *Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, at *17 (D.N.J. April 8, 2011) (granting final certification prior to approving settlement of FLSA collective action). As previously discussed, in the second stage of the certification procedure, Plaintiffs bear the burden of proving that they are similarly situated. In making this determination, the court must consider various factors, such as "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment." *Keller v. TD Bank, N.A.,* Civ. No. 12–5054, 2014 WL 5591033, at *8 (E.D.Pa. Nov. 4, 2014) (quoting *Zavala v. Wal Mart Stores, Inc.,* 691 F.3d 527, 536 (3d Cir. 2012)). Additionally, "Plaintiffs may be found dissimilar based on the existence of individualized defenses." *Id.*

The record establishes that Plaintiffs are similarly situated. The six Plaintiffs all represent that they worked as hourly Service Representatives or Customer Service Representatives at Defendants' Pennsylvania locations on or after March 15, 2014. *See* Consent to Join Forms of Opt-In Plaintiffs, ECF No. 44-1. Although the number of hours they worked and amount of wages they claim to be owed may differ, all allege that Defendants deducted thirty-minute lunch breaks that the Plaintiffs did not take and did not factor bonuses into their overtime rates. Defendants allege that Plaintiffs signed collective action waivers that preclude them from bringing this case as a collective action. The analysis to determine the enforceability and effect of any waiver would likely be the same with respect to all Plaintiffs. The Court is satisfied, for

purposes of the settlement, that the Plaintiffs are similarly situated and warrant final certification as an FLSA collective. *See Lovett v. Connect America.com*, No. CV 14-2596, 2015 WL 5334261, at *2 (E.D. Pa. Sept. 14, 2015) (addressing final certification for settlement in absence of argument by parties and finding certification appropriate where plaintiffs held same position with defendant and alleged similar FLSA violations).

### B. The Settlement Agreement resolves a bona fide dispute.

A proposed settlement resolves a bona fide dispute if its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354. The dispute in this case concerns whether Defendants modified hourly employees' timesheets to deduct thirty-minute lunch breaks regardless of how long, if at all, employees took breaks and failed to factor bonuses into the overtime rate for hourly employees. Defendants have denied all liability for unpaid compensation and claim that they did not know about any work Plaintiffs performed during their unpaid meal breaks. Additionally, Defendants raise issues that could limit recovery even if they did violate the FLSA: Defendants insist any violations were not willful, which they claim would limit Plaintiffs to a two-year recovery period,[3] and represent that they acted in good faith, which they claim would preclude an award of liquidated damages. The Court finds that the settlement resolves a bona fide dispute between the parties.

---

[3] The FLSA allows for a three-year limitations period for "willful" violations, in contrast to the ordinary two-year period. 29 U.S.C. § 255(a).

**C.  The settlement is fair and reasonable.**

The terms of the Settlement Agreement are fair and reasonable. As mentioned, the Court is required to consider whether the proposed settlement is fair, reasonable, and adequate under the nine factors identified in *Girsh v. Jepson*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975).

In this case, the first factor—the complexity, expense, and likely duration of the litigation—favors approval of the settlement. A number of complex legal issues remain contested, such as whether collective action waivers Plaintiffs allegedly signed preclude resolution of this case as a collective action, whether Plaintiffs can prove liability and damages through "representative evidence," and whether Defendants can prevail on a good faith defense under the FLSA. Defendants represent that, at the close of discovery, they would file both an extensive summary judgment motion and a motion to decertify the collective. The parties estimate that any trial would last well over a week and possibly more than two weeks because of the number of witnesses. Because the settlement avoids these expensive and complicated procedures, the first *Girsh* factor weighs in favor of approval.

The second factor favors approval because each Plaintiff signed an Acceptance and Verification of Settlement Agreement form, indicating their favorable reaction to the settlement.

The third factor requires the Court to consider the stage of proceedings and the amount of discovery completed. Courts must determine "whether counsel had an adequate appreciation of

the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). The parties have conducted discovery concerning the timekeeping and payroll data of all six Plaintiffs and have deposed Sawyer and his former manager. Although the parties have not yet deposed the rest of the Plaintiffs, Plaintiffs' counsel interviewed most of them, which would have informed counsel of the strength of their particular claims. This factor weighs in favor of the settlement.

The fourth and fifth *Girsh* factors consider the risk of establishing liability and damages at trial and "weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin Sodium*, 391 F.3d at 537. "The court must, to a certain extent, give credence to the estimation of the probability of success proffered by [Plaintiffs'] counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action." *Lachance v. Harrington*, 965 F. Supp. 630, 639 (E.D. Pa. 1997) (citing *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995)). Plaintiffs' counsel recognize significant obstacles to prevailing at trial. First, Defendants have produced evidence that they enforced a policy that prohibited off-the-clock work, and Sawyer's manager testified that he did not know about any employees working off the clock after 2013. Plaintiffs' counsel accept that they would have to dispute this evidence and that the outcome would be uncertain. Second, Plaintiffs recognize the difficulty they face in proving damages because of their high hourly rate of pay. The FLSA does not provide a remedy for "gap time," or unpaid non-overtime work in cases where the employee's hourly rate is sufficiently high that, when divided by the actual number of hours worked, the employee still earns more than the minimum wage. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014).  Plaintiffs concede that their total compensation for each week divided by the actual number of hours they worked always exceeded the minimum wage. Mot. 8.

Therefore, they could recover damages only for weeks in which they actually worked more than the forty hours as required for overtime; determining which weeks qualify presents complicated issues of detailed proof. The difficulties that Plaintiffs recognize cause the likelihood of success at trial to pale in comparison with the benefit of immediate settlement. The fourth and fifth factors support the settlement.

The likelihood of maintaining class—or, in this case, collective—certification if the action were to proceed to trial, the sixth *Girsh* factor, weighs in favor of approval but deserves only minimal consideration. *Girsh*, 521 F.2d at 157. "There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement*." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998). As a result, in a settlement class, this factor becomes essentially "toothless." *Id.*

The seventh factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440. The parties admit that Defendants could withstand a greater judgment; however, they do not justify the settlement in terms of Defendants' ability to pay. "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the settlement." *Tompkins*, 2017 WL 4284114, at *7 (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011)).

The eighth and ninth factors, the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation, ask the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium*, 391 F.3d at

538. "The factors test two sides of the same coin: reasonableness in light of the best possible

recovery and reasonableness in light of the risks the parties would face if the case went to trial."

*Id.* The settlement agreement awards Plaintiffs $21,900.01 to be divided proportionally to the

amount of time each worked for Defendants. This total sum is 78.62% of the maximum recovery

estimated by Plaintiffs and 88.87% of the maximum recovery estimated by Defendants. Mot. 11.

As mentioned above, Plaintiffs recognize significant issues that make their success at trial

uncertain. As a result, the settlement amount is a reasonable resolution of Plaintiffs' claims.

Although there is always a chance for greater recovery at trial, the benefits of the present

settlement outweigh the risks of continued litigation. As a result, the last two *Girsh* factors

support approving the settlement.

 The balance of the *Girsh* factors support approving the settlement. Accordingly, the Court

concludes that the proposed settlement is fair and reasonable.

### D.  The Settlement Agreement does not frustrate the implementation of the FLSA as long as the confidentiality clause is broadly construed.

 Lastly, this Court must consider whether the proposed settlement frustrates the

implementation of the FLSA in the workplace. The Settlement Agreement does not contain the

sort of overly broad release of claims that courts have rejected.[4] *See, e.g., Kraus v. PA Fit II,*

*LLC*, 155 F. Supp. 3d 516, 532–33 (E.D. Pa. 2016); *Bettger*, 2015 WL 279754, at *8–10.

 However, the Settlement Agreement does contain a confidentiality clause, which provides

that "[Plaintiffs] shall not, directly or indirectly, provide, transmit, divulge, disclose, reveal,

---

[4] Under the Settlement Agreement, Plaintiffs release only "any and all claims under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or any other wage-related statute arising out of Claimants' alleged employment with Defendants." Settlement Agreement ¶ 3.1. In other words, the parties limit the release provision to the claims at issue in this case.

quote, describe, paraphrase, summarize, publicize, publish, or in any other manner communicate to or with any other person or entity, any Confidential Information,[5] except to their spouses, their attorneys, their tax advisors, or as required by law." Settlement Agreement ¶ 5.1. The parties contend that this provision "does not offend the FLSA in this case because all of the 54 individuals whose rights under the FLSA are potentially at stake in his case have already received the Court-approved notice of Plaintiffs' claims and of the lawsuit." Mot. 10.

The parties adopt an overly permissive attitude toward confidentiality provisions in FLSA settlement agreements. "There is 'broad consensus' that FLSA settlement agreements should not be kept confidential." *Brown*, 2013 WL 5408575, at *3 (citing *Brumley*, 2012 WL 300583, at *3). The "public-private character" of employee rights under the FLSA means that the public, including current, former, or potential employees of a particular defendant, has an interest in assuring that employee wages are fair; thus, courts find that restrictive confidentiality provisions frustrate the implementation of the FLSA. *See Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (approving settlement agreement with the exception of confidentiality clause).

Courts have approved limited or narrowly drawn confidentiality clauses only where the clauses did not prevent plaintiffs from discussing the settlements with defendants' employees. *Id.* For example, in *McGee v. Ann's Choice, Inc.*, the court found a confidentiality provision reasonable where "[p]laintiffs are free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media." No. CIV.A. 12-2664, 2014 WL 2514582, at *3

---

[5]     The Settlement Agreement defines "Confidential Information" as "this Agreement, the Gross Settlement Amount, and all other terms and provisions of this Agreement, and all discussions, conversations, correspondence, and negotiations concerning and/or leading to the execution of this Agreement." Settlement Agreement ¶ 5.1.

(E.D. Pa. June 4, 2014). Because the confidentiality provision in the Settlement Agreement permits disclosure "as required by law," this Court will approve the provision as reasonable to the extent that it is interpreted to permit all Plaintiffs to discuss its terms with friends, family, Defendants' employees, and individuals not affiliated with the media. *See Li v. Family Garden II, Inc.*, No. 5:18-CV-01325, 2019 WL 1296258, at *3 (E.D. Pa. Mar. 20, 2019) (approving confidentiality provision under similar conditions). With that caveat, this Court finds that the Settlement Agreement does not frustrate the implementation of the FLSA in the workplace.

**V.     ORDER**

**AND NOW**, this 9th day of April, 2019, upon consideration of the joint motion for approval of the Settlement Agreement, ECF No. 50, **IT IS ORDERED THAT:**

1. The Motion is **GRANTED**.

2. The Settlement Agreement is **APPROVED**.

3. Plaintiffs shall file any petition for attorneys' fees and expenses **within fourteen days** of the date of this Order. Any petition shall justify the amount of attorneys' fees requested according to the lodestar or percentage-of-recovery method and by reference to awards in comparable cases. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195, n.1 (3d Cir. 2000); *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006).

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge